# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**
**Grand Jury Sworn in on May 11, 2006**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO. _____** |
| | : | |
| Plaintiff, | : | **GRAND JURY ORIGINAL** |
| | : | |
| | : | **VIOLATIONS:** |
| | : | |
| | : | **18 U.S.C. § 371 (Count 1);** |
| v. | : | **Conspiracy to Defraud the United States** |
| | : | **and to Commit Offenses Against** |
| | : | **the United States** |
| | : | |
| | : | **18 U.S.C. § 1001 (Counts 2-4);** |
| | : | **False Statement** |
| | : | |
| | : | **18 U.S.C. § 1341 (Counts 5-7);** |
| | : | **Mail Fraud** |
| **NELSON L. TI, and** | : | |
| **JOSE TIRONA,** | : | **18 U.S.C. § 1957 (Counts 8-13);** |
| a/k/a JOEY TIRONA, | : | **Money Laundering** |
| | : | |
| Defendants. | : | **18 U.S.C. § 1505 (Count 14);** |
| | : | **Obstruction of Proceeding Before** |
| | : | **Department and Agency** |
| | : | **of the United States** |
| | : | |
| | : | **18 U.S.C. § 2;** |
| | : | **Aiding and Abetting and** |
| | : | **Causing an Act to be Done** |
| | : | |
| | : | **18 U.S.C. § 982;** |
| _____ | : | **Forfeiture** |

## INDICTMENT

The Grand Jury charges that at all times material to this Indictment:

### INTRODUCTION

1.      NELSON L. TI ("TI") was a loan broker living in Manila, Philippines.  From in or about November 2003 through in or about December 2005, TI brokered approximately $16 million worth of fraudulent loan transactions between companies located in the Philippines and United States lending banks, in which the Export-Import Bank of the United States ("Ex-Im Bank") acted as guarantor or insurer.  As a loan broker, TI identified companies in the Philippines that wanted to borrow money to purchase United States goods and lending banks in the United States that would lend money for the purpose of buying United States goods.  TI then assisted the borrowers in executing loan agreements with the lending banks and in obtaining loan guarantees or insurance policies from the Ex-Im Bank as part of the loan agreements.  TI recruited United States exporters to purchase and ship the United States goods to the Philippine borrowers.  At the direction of TI, the exporters prepared false shipping documents and submitted those false documents to the lending banks, knowing that information contained in those documents would be sent to and relied upon by the Ex-Im Bank, misappropriated the loan proceeds, and sent most of the loan proceeds to companies owned and controlled by TI.

2.      JOSE TIRONA, a/k/a JOEY TIRONA ("TIRONA"), was co-owner and President of PBJ Venture International Corporation ("PBJ Venture"), an exporting company based in San Mateo, California that was in the business of purchasing United States goods on behalf of clients in the Philippines and shipping those goods overseas.  From in or about November 2003 through in or about December 2005, TIRONA and co-conspirator David Villongco acted as "exporters"

in approximately $16 million worth of fraudulent loan transactions brokered by TI.  In these

transactions, TIRONA and Villongco prepared shipping documents that falsely represented the

type, amount, value and country of origin of the goods to be shipped to the Philippines, submitted

those false documents to the lending banks, knowing that the information contained in the

documents would be sent to and relied upon by the Ex-Im Bank, misappropriated approximately

$13.6 million in loan proceeds, and sent approximately $13.3 million of those loan proceeds to

bank accounts owned or controlled by TI and other foreign bank accounts as directed by TI.

      3.      The Ex-Im Bank was an independent agency of the United States and had its

headquarters located at 811 Vermont Avenue, N.W., Washington, D.C. 20571.  It was the official

export credit agency of the United States.  The mission of the Ex-Im Bank was to assist in the

export of United States goods to companies overseas.  One of the ways the Ex-Im Bank fulfilled

this mission was by issuing loan guarantees and insurance to lending banks on behalf of

creditworthy foreign companies for the purpose of purchasing goods made in the United States.

Once the Ex-Im Bank issued a loan guarantee or insurance policy, if the foreign borrower

defaulted on its loan repayments to a lending bank, the Ex-Im Bank paid the amount of the

outstanding loan to the lending bank.  In connection with the issuance of loan guarantees and

insurance policies, the Ex-Im Bank required that a lending bank obtain certain shipping

documentation from the United States exporter.  The exporter was the entity that shipped the

United States goods on behalf of the foreign borrower.  The Ex-Im Bank required that an

exporter certify to the lending bank the type, amount, and value of the United States goods that it

had shipped and that the goods shipped were made in the United States.  These certifications

were typically made in a standard Ex-Im Bank form called an Export-Import Bank Form of

Exporter's Certificate ("Ex-Im Bank Exporter's Certificate"), where the exporter certified that

the shipping information provided was true and accurate, as well as in a commercial invoice,

where the exporter listed the amount and type of United States goods purchased and shipped.

Without these certifications and commercial invoices, the lending bank would not be able to

obtain the Ex-Im Bank loan guarantees and insurance.

4.      Relying on information contained in fraudulent shipping documents submitted at

the direction of TI to the lending banks by TIRONA and Villongco, the Ex-Im Bank provided

United States lending banks with a total of approximately $16 million worth of loan guarantees

and insurance, promising that the Ex-Im Bank would reimburse the lending banks for any losses

they incurred in the loan transactions brokered by TI.  As a result of defaults related to the

fraudulent loan transactions brokered by TI, and facilitated by TIRONA and Villongco, the Ex-

Im Bank has paid out approximately $12.5 million in claims to the lending banks.

## COUNT ONE
### (Conspiracy to Defraud the United States)

THE CONSPIRACY AND ITS OBJECTS

5.      From in or about November 2003 through in or about December 2005, in the

District of Columbia and elsewhere, TI, TIRONA, Villongco, and others known and unknown to

the Grand Jury did unlawfully and knowingly agree, combine and conspire together and with

each other and others, known and unknown to the Grand Jury, to defraud the United States and

agencies thereof and to commit the following offenses against the United States:

a.      to defraud the United States of and concerning its right to have its officers
and employees, and particularly the personnel of the Ex-Im Bank, free to

4

transact the official business of the United States unhindered, unhampered, unobstructed and unimpaired by the exertion upon them of dishonest, corrupt, unlawful, improper and undue pressure and influence, in violation of Title 18, United States Code, Section 371;

b.    to defraud the Ex-Im Bank, an agency of the United States, of money and property by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 371;

c.    to knowingly and willfully make and cause to be made, in a matter within the jurisdiction of the Ex-Im Bank, an agency of the United States, a false, fictitious, and fraudulent material statement and representation, in violation of Title 18, United States Code, Section 1001;

d.    to knowingly devise, and intend to devise, through the use of a commercial interstate carrier, a scheme and artifice to defraud the United States and the Ex-Im Bank, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1341;

e.    to knowingly engage in and cause to be engaged in monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000 and derived from specified unlawful activity; that is, transferred the proceeds of the fraudulent loans to bank accounts owned and controlled by co-conspirators, contrary to Title 18, United States Code, Section 1957; and

f.    to corruptly influence, obstruct and impede and endeavor to influence, obstruct and impede the due and proper administration of the law under which a pending investigation was being conducted by the Ex-Im Bank of the United States, in violation of Title 18, United States Code, Section 1505.

<u>Nature and Purpose of the Conspiracy</u>

6.    The nature and purpose of the conspiracy was for TI, TIRONA, Villongco, and others known and unknown to the Grand Jury, to unlawfully enrich themselves by submitting and causing the submission of false and fraudulent information to Ex-Im Bank, through the lending

banks, to fraudulently obtain loan proceeds on behalf of Philippine borrowers, and to

misappropriate the loan proceeds.

<u>Manner and Means of the Conspiracy</u>

7.     To carry out the conspiracy, TI, TIRONA, Villongco and others known and

unknown to the Grand Jury, used the following manners and means, among others:

a.     TI identified borrowers in the Philippines and lending banks in the United

States and assisted the Philippine borrowers in executing loan agreements with the lending banks

by obtaining loan guarantees and export credit insurance through the Ex-Im Bank.

b.     TI caused the lending banks to submit false and fraudulent Preliminary

Commitment and Final Commitment Applications to the Ex-Im Bank, in Washington, D.C., for

the purposes of obtaining Ex-Im Bank loan guarantees and insurance covering the Philippine

loan transactions.

c.     At the direction of TI, TIRONA and Villongco prepared shipping

documents, including Ex-Im Bank Exporter's Certificates and commercial invoices, for

submission to the lending banks that falsely represented the type, amount, value, and country of

origin of the goods to be shipped to the Philippines, knowing that the false information contained

in those documents would be sent to and relied upon by the Ex-Im Bank;

d.     At the direction of TI, TIRONA and Villongco caused the submission to

the Ex-Im Bank, through the lending banks, of the false shipping documents, including the Ex-Im

Bank Exporter's Certificates and commercial invoices.

e.     TIRONA and Villongco received the proceeds of the loans from the

lending banks, distributed a portion of the proceeds amongst themselves for their own personal

benefit and use, and then transferred millions of dollars of proceeds to bank accounts owned and controlled by TI and other foreign bank accounts as directed by TI.

        f.      TI instructed TIRONA and Villongco to lie to representatives of the Ex-Im Bank when they questioned the loan transactions and sought loan documents.

Overt Acts

    8.      Within the District of Columbia and elsewhere, in furtherance of the above described conspiracy and in order to carry out the objects thereof, TI, TIRONA, Villongco, and others known and unknown to the Grand Jury, committed the following overt acts, among others:

        a.      From in or about November 2003 through in or about August 2004, TI brokered approximately five loan transactions between Philippine borrowers and United States lending banks, in which the Ex-Im Bank acted as guarantor or insurer.

        b.      From in or about November 2003 through in or about August 2004, TI hired TIRONA and Villongco to act as exporters in approximately five loan transactions that he brokered between Philippine borrowers and United States lending banks, in which the Ex-Im Bank was used as guarantor or insurer.

        c.      From in or about November 2003 through in or about August 2004, TI, TIRONA, and Villongco caused the submission of approximately five false and fraudulent Preliminary Commitment and Final Commitment Applications to the Ex-Im Bank.

        d.      From in or about November 2003 through in or about August 2004, TIRONA and Villongco prepared false shipping documents, including Ex-Im Bank Exporter's Certificates and commercial invoices, stating that they had purchased approximately $16 million worth of United States goods and shipped those goods to the Philippine borrowers.

7

e.       From in or about November 2003 through in or about August 2004, TIRONA and Villongco sent to the lending banks the false shipping documents that they prepared, as proof that they had purchased approximately $16 million worth of United States goods and shipped those goods to the Philippine borrowers, knowing that the information contained in those documents would be sent to and relied upon by the Ex-Im Bank.

f.       On or about February 2, 2004, TIRONA and Villongco prepared false shipping documents, including a false Ex-Im Bank Exporter's Certificate and commercial invoice, involving a loan to Panay Oil Manufacturing Corporation, and sent those false shipping documents to the lending bank, knowing that the information contained in those documents would be sent to and relied upon by the Ex-Im Bank.

g.       From in or about November 2003 through in or about August 2004, TIRONA and Villongco received approximately $13.6 million in loan proceeds from the lending banks.  Rather than using the loan proceeds to purchase United States goods, TIRONA and Villongco kept approximately $300,000 of the loan proceeds and transferred approximately $13.3 million to bank accounts owned and controlled by TI and other foreign bank accounts as directed by TI.

h.       In or about November 2005, after several Philippine loans went into default and after the Ex-Im Bank began investigating these defaults, TI instructed TIRONA and Villongco to provide materially false and misleading information to investigators employed by the Ex-Im Bank.

8

    i.  From in or about November 2005 through in or about December 2005, TI, TIRONA, and Villongco provided materially false and misleading information to investigators employed by the Ex-Im Bank.

**(Conspiracy to Defraud the United States and to Commit Offenses Against the United States, and Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 371 and 2).**

## COUNTS 2-4
### (False Statements)

    9.  Paragraphs 1 through 4 and 8 of this Indictment are realleged and incorporated by reference as if set out in full.

    10.  As described below, from in or about October 2003 through in or about April 2004, in the District of Columbia and elsewhere, TI, TIRONA, Villongco, and others known and unknown to the Grand Jury, did knowingly and willfully make and cause to be made, in a matter within the jurisdiction of the Ex-Im Bank, an agency of the United States, materially false, fictitious and fraudulent statements and representations to the Ex-Im Bank:

| Count | Defendants | On or about Date | False Statement to the Ex-Im Bank |
|---|---|---|---|
| 2 | TI<br><br>TIRONA | 10/23/2003 | Preliminary Commitment and Final Commitment Application for VIP Health & Fitness Center, Inc. loan, sent from Toronto-Dominion Bank to the Ex-Im Bank in Washington, D.C. |
| 3 | TI<br><br>TIRONA | 10/23/2003 | Preliminary Commitment and Final Commitment Application for Panay Oil Manufacturing Corp. loan, sent from Toronto-Dominion Bank to the Ex-Im Bank in Washington, D.C. |

| 4 | TI<br><br>TIRONA | 4/12/2004 | Preliminary Commitment and Final Commitment Application for TEJ Natural Products, Inc. loan, sent from Toronto-Dominion Bank to the Ex-Im Bank in Washington, D.C. |
|---|---|---|---|

**(False Statements, Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 1001 and 2)**.

## COUNTS 5-7
## (Mail Fraud)

11.     Paragraphs 1 through 4 and 8 of this Indictment are realleged and incorporated by reference as if set out in full.

12.     As described below, from in or about October 2003 through in or about April 2004, in the District of Columbia and elsewhere, TI, TIRONA, Villongco, and others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute a scheme and artifice to defraud, did knowingly cause to be transmitted in interstate commerce, by means of commercial interstate carrier, false and fraudulent Preliminary Commitment and Final Commitment Applications from the lending banks to the Ex-Im Bank, knowing that those false documents would be relied upon by the Ex-Im Bank:

| Count | Defendants | On or about Date | Use of Commercial Interstate Carrier |
|---|---|---|---|
| 5 | TI<br><br>TIRONA | 10/23/2003 | Preliminary Commitment and Final Commitment Application for VIP Health & Fitness Center, Inc. loan, sent via Federal Express from Toronto-Dominion Bank, in Texas, to the Ex-Im Bank in Washington, D.C. |

| 6 | TI<br><br>TIRONA | 10/23/2003 | Preliminary Commitment and Final Commitment Application for Panay Oil Manufacturing Corp. loan, sent via Federal Express from Toronto-Dominon Bank, in Texas, to the Ex-Im Bank in Washington, D.C. |
| 7 | TI<br><br>TIRONA | 4/12/2004 | Preliminary Commitment and Final Commitment Application for TEJ Natural Products, Inc. loan, sent via Federal Express from Toronto-Dominion Bank, in Texas, to the Ex-Im Bank in Washington, D.C. |

**(Mail Fraud, Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 1341 and 2).**

## COUNTS 8-13
## (Money Laundering)

13.     Paragraphs 1 through 4 and 8 of this Indictment are realleged and incorporated by reference as if set out in full.

14.     As described below, from in or about February 2004 through in or about July 2004, in the District of Columbia and elsewhere, TI, TIRONA, Villongco, and others known and unknown to the Grand Jury, did knowingly engage and cause to be engaged in monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, mail fraud:

| Count | Defendants | On or about Date | Financial Transaction | Specified Unlawful Activity |
|---|---|---|---|---|
| 8 | TI<br><br>TIRONA | 2/11/2004 | Wire transfer of approximately $372,529 from PBJ Venture to Nelson L. Ti | Mail Fraud |

| 9 | TI  TIRONA | 2/11/2004 | Wire transfer of approximately $1,108,014 from PBJ Venture to Wing On Sales Int'l Co. | Mail Fraud |
|---|---|---|---|---|
| 10 | TI  TIRONA | 2/11/2004 | Wire transfer of approximately $1,100,312 from PBJ Venture to B1224N | Mail Fraud |
| 11 | TI  TIRONA | 7/21/2004 | Wire transfer of approximately $680,896 from PBJ Venture to Jerry Ty | Mail Fraud |
| 12 | TI  TIRONA | 7/21/2004 | Wire transfer of approximately $432,942 from PBJ Venture to B1224N | Mail Fraud |
| 13 | TI  TIRONA | 7/21/2004 | Wire transfer of approximately $300,000 from PBJ Venture to Lau Ching Che | Mail Fraud |

**(Money Laundering, and Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 1957 and 2)**.

## COUNT 14
**(Obstruction of Proceeding Before Department and Agency of the United States)**

15.    Paragraphs 1 through 4 and 8 of this Indictment are realleged and incorporated by reference as if set out in full.

16.    In or about November 2005, after TI, TIRONA, and Villongco learned that investigators employed by the Ex-Im Bank had commenced an official investigation into Philippine loan defaults, TI instructed TIRONA and Villongco to provide materially false and misleading information to investigators of the Ex-Im Bank related to the Philippine loans. Specifically, TI instructed TIRONA and Villongco, among other things, to tell investigators of the Ex-Im Bank that TIRONA and Villongco actually purchased the United States goods called for under the loan agreements, but that the supplier from whom they purchased such goods was

in bankruptcy and that the supplier could not be contacted.  In truth and in fact, as TI, TIRONA, and Villongco then and there well knew, TIRONA and Villongco did not actually purchase the United States goods called for under the loan agreements.

17.    From in or about November 2005 through in or about December 2005, at TI's direction, TIRONA and Villongco provided materially false and misleading information to investigators employed by the Ex-Im Bank related to the Philippine loans.

18.    From in or about November 2005 through in or about December 2005, in a continuing course of conduct, TI, TIRONA, and Villongco, in the District of Columbia and elsewhere, did corruptly influence, obstruct and impede and endeavor to influence, obstruct and impede the due and proper administration of the law under which a pending proceeding was being had before any department and agency of the United States; that is, TI, TIRONA and Villongco provided materially false and misleading information to investigators employed by the Ex-Im Bank, an agency of the United States, conducting an investigation as authorized by law into Philippine loan defaults.

**(Obstruction of Proceeding Before Department and Agency of the United States, and Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 1505 and 2)**.

## FORFEITURE

19.    The violations alleged in Counts 5-7 and 8-13 of this Indictment are realleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to Title 18, United States Code, Sections 981 and 982(a)(1), and Title 28, United States Code, Section 2461(c).

20.     As a result of the mail fraud offenses alleged in Counts 5-7 of this Indictment, defendants TI and TIRONA shall, upon conviction of such offenses alleged in this Indictment, forfeit to the Untied States all property, real and personal, which constitutes or is derived from proceeds traceable to the mail fraud offense, wherever located, and in whatever name held, including, but not limited to a sum of money equal to the amount of proceeds obtained as a result of the mail fraud, in violation of Title 18, United States Code, Section 1341. By virtue of the offenses charged in Counts 5-7 of the Indictment, any and all interest that the defendants have in the property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such offenses is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 981, in conjunction with Title 28, United States Code, Section 2461(c).

21.     As a result of the money laundering offenses alleged in Counts 8-13 of this Indictment, defendants TI and TIRONA shall forfeit to the Untied States any property, real and personal, involved in, or traceable to such property involved in money laundering, in violation of Title 18, United States Code, Section 1957, including but not limited to the sum of money equal to the total amount of property involved in, or traceable to property involved in those violations. By virtue of the commission of the felony offenses charged in Counts 8-13 of this Indictment, any and all interest that the defendants have in the property involved in, or traceable to property involved in money laundering is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 982(a)(1).

22.     In the event that any property described above as being subject to forfeiture, as a result of any act or omission by the defendants:

14

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to or deposited with a third person;

(c)  has been placed beyond the jurisdiction of the Court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982, to seek

forfeiture of any other property of TI and TIRONA up to the value of the above described

property in paragraph 22(a)-(e).

**(Forfeiture, Title 18, United States Code, Sections 981 and 982(a)(1), Title 28, United States Code, Section 2461(c))**.

A TRUE BILL

_____
FOREPERSON

ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA

_____

U.S. DEPARTMENT OF JUSTICE
CRIMINAL DIVISION, FRAUD SECTION

_____

15